# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BARBARA ROUNTREE,

    Plaintiff,

    v.

EVU RESIDENTIAL, LLC,

    Defendant.

Case No. 2:25-cv-195

JUDGE DOUGLAS R. COLE
Magistrate Judge Jolson

## OPINION AND ORDER

Plaintiff Barbara Rountree worked for Defendant EVU Residential, LLC, for a little under a year. She alleges that her time there was marked by disability discrimination, ultimately leading to her termination. So Rountree sued EVU for discrimination and retaliation. But EVU never appeared to defend itself. Rountree thus sought an entry of default from the Clerk's Office and then filed the instant motion for default judgment. For the reasons below, the Court **GRANTS IN PART** Rountree's Motion for Default Judgment (Doc. 11), and Motion for Damages, Attorneys' Fees, and Costs (Doc. 12). Specifically, the Court grants the requested amount of back pay, attorneys' fees and costs, but the Court sets the matter for an evidentiary hearing on the question of appropriate noneconomic damages.

## BACKGROUND[1]

Rountree began working for EVU in November 2022 as an Occupancy Specialist and Assistant Property Manager. (Compl., Doc. 1, #2). During her tenure, EVU's General Manager, Richard Hysell, discriminated against Rountree based on her age. (*Id.* at #2–3). So Rountree filed a complaint concerning that discriminatory conduct with her regional supervisor. (*Id.* at #3). But according to Rountree, EVU did not investigate that complaint or take any sort of remedial action. (*Id.* at #4).

That failure to investigate or remediate left the door open for "further discriminatory and retaliatory treatment" against Rountree. (*Id.*). Following her complaint, Rountree says that someone superglued her office shut. (*Id.*). That prompted her to file a second complaint, but this time for retaliation. (*Id.*). The result, however, was the same—EVU failed to investigate the retaliatory incident. (*Id.* at #4–5).

From there, things only worsened. After Rountree filed the second complaint, Hysell "stopped properly maintaining the apartment units for which Rountree was responsible." (*Id.* at #5). And then, on October 12, 2023, without first issuing the progressive disciplinary warnings that EVU's disciplinary policy requires, EVU terminated Rountree and hired a "significantly younger" employee in her place. (*Id.* at #6). Rountree was sixty-four years old when EVU terminated her. (*Id.* at #2).

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See In re Cook*, 342 B.R. 384 (Table), 2006 WL 908600, at *3 (B.A.P. 6th Cir Apr. 3, 2006). So the Court's summary of the factual background rests on the allegations in Rountree's Complaint (Doc. 1).

Rountree responded by filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC), which issued her a right-to-sue letter. (*Id.* at #2). With that in hand, Rountree timely filed this lawsuit on February 28, 2025. She asserts four counts: age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) and Ohio's civil rights statute, Ohio Rev. Code § 4112.01 et seq. (Counts I and II), and retaliation under the same two statutes (Counts III and IV). (*Id.* at #7–11). EVU, however, neither answered nor otherwise responded to Rountree's Complaint, notwithstanding being served at two addresses in March 2025. (Docs. 4, 5).

Despite EVU's failure to appear and defend, though, Rountree did nothing. So, the Magistrate Judge ordered Rountree either to request entry of default or otherwise show cause why the Court should not dismiss the matter. (Order, Doc. 7). Perhaps not surprisingly, Rountree chose the former, applying for entry of default against EVU four days later. (Doc. 8). The Clerk entered default against EVU just a few days after that, on May 12, 2025. (Doc. 9).

Rountree again went silent. So, after a few weeks, the Magistrate Judge again ordered Rountree to show cause why the Court should not dismiss the matter based on Rountree's failure to move for default judgment. (Doc. 10). That once again kick-started the matter, with Rountree moving for default judgment against EVU on June 9, 2025. (Doc. 11). Then a few days later she moved for damages and fees, seeking a judgment of $8,333.86 in economic damages and $25,000 in compensatory damages.[2]

---

[2] Both economic and noneconomic damages are types of compensatory damages. *Smith v. Perkins*, 241 N.E.3d 889, 901–02 (Ohio Ct. App. 2024). Rountree, however, confusingly uses

(Doc. 12, #44). She also requests $5,000 in attorneys' fees and $690 in costs. (*Id.*). With that, the matter is ripe.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021) (cleaned up); *see also* Fed. R. Civ. P. 8(b)(6). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997)

---

the terms "economic damages" and "compensatory damages," as though the former were not a subset of the latter. (Doc. 12, #44). Given her use of the phrase "compensatory damages" as distinct from "economic damages," the Court understands her to use the former phrase to mean "noneconomic damages."

4

("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

After confirming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (cleaned up). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

To begin, the Court concludes that Rountree has satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. EVU failed to plead or otherwise defend this action despite Rountree serving EVU at two locations on March 15, 2025, and March 17, 2025. (Docs. 4, 5).

Rountree's claim, though, is not for a sum certain, so the Court must determine whether she is entitled to default judgment under Rule 55(b)(2). Ultimately, she is.

**A.     The Court Has Jurisdiction Over This Matter.**

Jurisdiction poses no hurdles for Rountree. Start with subject-matter jurisdiction. Rountree asserts two claims under the ADEA—a federal law—which means the Court has federal question jurisdiction over those claims, 28 U.S.C. § 1331,

5

and will exercise supplemental jurisdiction over Rountree's two analogous state-law claims, 28 U.S.C. § 1367(a). Turn then to personal jurisdiction. Based on the allegations—which EVU is deemed to have admitted, *Harbold v. Smash Restro & Bar, LLC*, No. 5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023)—EVU is a foreign limited liability company that "hires citizens of the State of Ohio, contracts with companies in Ohio, and/or owns or rents property in Ohio." (Doc. 1, #1). And the allegations here arise out of EVU discriminating against Rountree while employed by EVU in Ohio. (*Id.* at #2–7). EVU has therefore purposefully availed itself of the privilege of acting in Ohio; Rountree's claims arise from EVU's activities in Ohio; and EVU's actions have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. *Carbone v. Kaal*, 140 F.4th 805, 810 (6th Cir. 2025). In short, the Court has personal jurisdiction over EVU.

**B.     Rountree Plausibly Alleged Age Discrimination and Retaliation.**

Satisfied that the Court has jurisdiction to consider Rountree's claims, the Court next determines whether Rountree has stated a claim for relief against EVU. Rountree, recall, asserts age discrimination claims under the ADEA and Ohio Revised Code § 4112.02 and retaliation claims under those same statutes. Because the ADEA and Ohio state law "employ the same analytical framework," the Court analyzes the analogous federal and state claims together. *Shivers v. Charter Commc'ns, Inc.*, No. 22-3574, 2023 WL 3244781, at *5 (6th Cir. May 4, 2023). With that established, take the two categories of claims—age discrimination and retaliation—in turn.

6

The ADEA prohibits employers from firing employees who are forty years old or older because of their age. 29 U.S.C. §§ 623(a)(1), 631(a). To plausibly allege age discrimination—or in other words, to state a claim that would survive a Rule 12(b)(6) motion to dismiss—Rountree must allege facts from which the Court can reasonably infer that discrimination occurred. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). And in making that determination, the elements of a prima facie case of age discrimination—which Rountree would, if this case had proceeded to summary judgment, have had to establish via evidence—are a helpful starting point. *Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 833–34 (S.D. Ohio 2022) (describing the prima facie elements as a "sufficient but not necessary threshold"). Those elements include that (1) she was at least forty years old at the time the discrimination occurred, (2) EVU took adverse employment action against her, (3) she was otherwise qualified for her position, and (4) there are "circumstances that support an inference of discrimination." *See Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (citations omitted).

Comparing Rountree's allegations to those elements, the Court concludes that her age discrimination claim would survive a motion to dismiss. She claims she was sixty-four when EVU terminated her, (Doc. 1, #2, 8), which satisfies the first two elements, *Giron v. Tyco Elecs. Corp.*, 762 F. App'x 233, 237 (6th Cir. 2019) ("[T]ermination … is clearly an adverse employment action."). Rountree further alleges that she received no disciplinary warnings concerning her performance before her termination, which at least suggests she was qualified for her position. (Doc. 1,

7

#6; *see also id.* at #8 ("Rountree was qualified for her position.")). And she also says that EVU replaced her with a "significantly younger employee," (*id.* at #6), which, given her near-retirement age, makes it at least plausible that age discrimination occurred, *see Southall*, 645 F. Supp. 3d at 836–37.

Rountree likewise plausibly alleged her retaliation claims. The prima facie elements (which, again, serve only as a helpful guide at this stage) of a retaliation claim are: (1) Rountree engaged in protected activity; (2) EVU knew she engaged in that activity; (3) EVU then took adverse employment action against Rountree; and (4) there was a causal connection between the protected activity and the adverse action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). Here, Rountree alleges that she lodged two internal complaints—one with her regional supervisor and the other with EVU (presumably, human resources)—concerning the discriminatory and retaliatory treatment she suffered, (Doc. 1, #3–4), which satisfies the first and second elements, *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (finding that protected activity includes "complaints to management and less formal protests of discriminatory employment practices"). And the Court already explained that termination is an adverse employment action. As for causation, Rountree alleges that EVU terminated her within a month after she raised the second internal complaint. (Doc. 1, #4, 6). That temporal proximity is enough to plausibly allege a causal connection. *See Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 850 (S.D. Ohio 2020).

8

## C. Rountree Is Entitled to Damages, Attorney's Fees, and Costs.

Given that Rountree has stated plausible claims under the ADEA and Ohio law, the Court turns to damages. Rountree asserts that she is entitled to $8,333.86 in economic damages plus interest, $25,000 in noneconomic damages, $5,000 in attorneys' fees, and $690 in costs. (Doc. 12, #44). Rountree and her attorney, moreover, provided declarations attesting to those damages, fees, and costs. (Rountree Decl., Doc. 12-1; Breedlove Decl., Doc. 12-2).

Rountree starts by requesting backpay (that is, economic damages) for the two months she was unemployed after EVU terminated her, during which time she was seeking other employment. (Doc. 12, #45–46; Doc. 12-1, #51–52). The ADEA permits backpay awards. *See* 29 U.S.C. § 626(b) (permitting courts to "grant such legal or equitable relief as may be appropriate to effectuate [its] purposes"); *see also Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). Those backpay awards, moreover, are meant "to restore the employee to the position [s]he would have been in if the discrimination had not occurred." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996), *opinion amended on denial of reh'g*, 97 F.3d 833 (6th Cir. 1996). When EVU terminated Rountree, she was earning $50,000 per year, (Doc. 12-1, #51), or approximately $4,166.67 per month. So for the two months she was seeking new employment, Rountree is entitled to $8,333.33[3] in backpay.

---

[3] Rountree requests $8,333.86 in backpay. (Doc. 12, #46). But the court is unclear how she arrived at that number—she did not provide a calculation. Perhaps she calculated damages on an hourly, daily, or weekly basis. But the Court has been unable to replicate her number using any of those methods. As the difference is fifty-three cents, the Court declines to pursue it further.

The Court will further award prejudgment interest on Rountree's backpay award. *McMahon v. Libbey-Owens-Ford Co.*, 870 F.2d 1073, 1079 (6th Cir. 1989) ("Prejudgment interest is designed to compensate a plaintiff for loss of the use of [her] wages wrongfully withheld through a discriminatory discharge."). That said, Rountree's motion merely states that both federal law and Ohio law allow the Court to award interest; it doesn't specify under which law she seeks that interest. (Doc. 12, #46). And she cannot obtain prejudgment interest under both federal and state law. *See Jordan v. City of Cleveland*, No. 1:02-cv-1280, 2008 WL 11380193, at *2 (N.D. Ohio June 6, 2008) ("[T]here c[an] be no double recovery when recovery for the same damages has been obtained under state law."). In the absence of briefing demonstrating whether Rountree has met Ohio Revised Code § 1343.03's (Ohio's prejudgment interest statute) requirements, *see Morgan v. Consun Food Indus., Inc.*, 245 N.E.3d 1190, 1209 (Ohio Ct. App. 2024), the Court awards prejudgment interest under federal law. While federal law largely leaves the appropriate rate for such interest to the Court's discretion, "courts often apply the statutory postjudgment framework set forth in 28 U.S.C. § 1961." *Benton v. BlueCross BlueShield of Tennessee, Inc.*, 765 F. Supp. 3d 723, 740 (E.D. Tenn. 2025). The Court finds that using that rate here—approximately 4.07%—satisfies the remedial goal of compensating Rountree for her lost wages without unjustly enriching or penalizing either party. *Id.*; Bd. of Governors of the Fed. Rsrv. Sys., *Mkt. Yield on U.S. Treasury Secs. At 1-Year Constant Maturity*, https://perma.cc/V2LK-M2BR.

10

Next, Rountree seeks $25,000 in non-economic damages based on the emotional distress she suffered because of the discrimination.[4] (Doc. 12, #46). That request starts on firm footing, as damages for emotional distress are available under Ohio Revised Code Chapter 4112. *See Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1219 (Ohio 1999) (finding that § 4112.99 "embrace[s] the panoply of legally recognized pecuniary relief"); *see also Finnegan v. Wendy's Int'l, Inc.*, No. 2:08-cv-185, 2008 WL 2078068, at *4 (S.D. Ohio May 13, 2008).[5]

But that still leaves the question of how much. For that determination, Rountree points the Court to Ohio Revised Code § 2315.18(B)(2), which limits noneconomic damages for cases brought under § 4112.052 (and other provisions of the Code) to the greater of either $250,000 or "an amount that is equal to three times

---

[4] Rountree's request for emotional distress damages is based solely on Ohio statutory law, which makes sense given that "the ADEA does not authorize awards of compensatory damages for pain and suffering or emotional distress." *Kulling v. Grinders for Indus., Inc.*, 115 F. Supp. 2d 828, 843 (E.D. Mich. 2000) (collecting cases).

[5] Ohio's 2021 Employment Law Uniformity Act (ELUA) amended Ohio Revised Code Chapter 4112 in several meaningful ways. Most relevant here, the 2021 amendments added an administrative exhaustion requirement for employment discrimination claims. *See* Ohio Revised Code § 4112.052(B)(1); *see also Glenn v. Trumbull Cnty. Comm'rs*, 239 N.E.3d 1010, 1021 (Ohio Ct. App. 2024). But there are exceptions. Under § 4112.052(B)(2), for example, an individual may file a lawsuit without satisfying subsection (B)(1)'s requirements if she (1) timely files a charge of discrimination with the Ohio Civil Rights Commission (OCRC), (2) timely files a charge of discrimination with EEOC, and (3) receives notice of a right to sue from EEOC. That said, Ohio is a "deferral state," which means that charges filed with EEOC are automatically referred to OCRC, and vice versa, under a workshare agreement. *Dadosky v. Mid-Am. Conversion Servs. LLC*, No. 2:22-cv-2503, 2024 WL 1347443, at *3 (S.D. Ohio Mar. 29, 2024). Said differently, "any charges filed with the EEOC are also automatically deemed dual-filed with the OCRC." *Id.* Here, Rountree filed a charge of discrimination with the EEOC and received a notice of right to sue. (Doc. 1, #2). Given Ohio's deferral-state status, Rountree's charge presumably was dual-filed with OCRC. That means she falls within § 4112.052(B)(2)'s administrative exhaustion exception. So the Court concludes that Rountree has properly brought her state-law claims alleging violations of § 4112.02, and that she's thus entitled to non-economic damages.

11

the economic loss." And since Rountree's economic losses total $8,333.33, she requests three times that amount—$25,000. (Doc. 12, #46). But the statute merely provides a *cap* on such awards, it does not purport to serve as a means for calculating a baseline amount. And Rountree provides precious little in her affidavit that would justify the award she seeks here. Accordingly, the Court declines to award the requested amount, at least for now, but will set the matter for an evidentiary hearing to further explore the issue.

Finally, Rountree requests $5,000 in fees and $690 in costs. (Doc. 12, #44). Trisha Breedlove, Rountree's attorney, did not submit a billing statement detailing how she allocated billable hours to this matter, or even how many billable hours she dedicated. Breedlove's declaration merely states that Rountree "has incurred attorney's fees in the amount of approximately $5,000.00" throughout this case. (Doc. 12-2, #54). So it's hard to discern whether the hours expended were appropriate. The declaration adds that the hourly rate at which Rountree incurred fees was between $325 and $550 per hour. (*Id.*). Assuming the higher rate applied throughout (which would produce the lowest number of billable hours), Rountree's attorney(s) would have spent about nine hours on this case. While Rountree's attorney could have done a better job of justifying that request, the Court finds that nine hours is a reasonable estimate of the time spent on this case. After all, the attorney presumably had to meet with her client, prepare a complaint, prepare a request for entry of default, and prepare a motion for default judgment, attaching evidentiary materials. While none of those tasks is particularly complex or time consuming, it is not surprising that

performing all four of them would take roughly nine hours. So the Court awards $5,000 in fees.

As for costs, those consist of a $405 filing fee and $285 in administrative costs. (Doc. 12-3, #55). Given those costs were reasonable and necessary to the litigation, the Court will allow $690 in costs.

## CONCLUSION

For reasons explained, the Court **GRANTS** Rountree's Motion for Default Judgment (Doc. 11) and **GRANTS IN PART** her Motion for Damages, Attorneys' Fees, and Costs (Doc. 12). As to the latter, the Court grants the requested back pay (along with prejudgment interest), attorneys' fees, and costs, but sets the matter for an evidentiary hearing regarding noneconomic damages. Rountree's counsel is **DIRECTED** to contact the Courtroom Deputy to set the hearing date.

**SO ORDERED.**

July 29, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**